### 8454. HARDY v. TRUITT et al.

1. A judgment by the Court of Appeals, awarding damages for carrying up a case for the purpose of delay only, is given not only as a penalty upon the plaintiff in error, but also as compensation for the delay, cost, and vexation occasioned thereby to the defendant in error.

2. Where the plaintiff obtains a verdict and judgment on a suit upon a promissory note secured by a deed to land, and a judgment overruling a motion for a new trial of the case is affirmed by this court, with damages for delay, the damages become a part of the debt sued for; the other parts being the principal, the interest, the costs, and (in a proper case therefor) attorney's fees. In such a case the judgment for damages is a special judgment, and is a superior lien to a general judgment obtained prior thereto but after the execution of the deed.

3. The judgment in favor of the transferee of the bond to reconvey the land, although obtained subsequently to a general judgment against the transferer of the bond, rendered after the transfer, was superior to the older judgment and had a superior claim to the fund derived from the sale of the land covered by the bond. It had, however, an inferior claim to the fund derived from the sale of the land of the transferer not covered by the bond.

DECIDED JULY 19, 1917.

Money rule; from city court of LaGrange—Judge Harwell. December 23, 1916.

This was a rule to distribute money in the hands of the sheriff of Troup county, arising from a sale of real estate. The bill of exceptions sets out the following facts: It appeared, from the evidence, that on April 12, 1905, W. F. Hogg executed a promissory note for $3,880.87 and interest, payable to J. G. Truitt, and a deed to 536 acres of land as security for its payment. Certain credits were made on the note, and all the land except the 416½ acres involved in this controversy was released. After the execution of the above-mentioned deed, Hogg executed, as additional security for the debt, a deed to Truitt, dated February 13, 1912, to 50 acres of land, known as the Carlisle place. "These deeds, to wit, the one describing the 416½ acres, and the one describing the 50 acres (the Carlisle place), were both foreclosed for the principal, interest, and costs, then amounting to the sum of $4,144.79." Upon the rendition of the judgment Hogg sued out a writ of error, and on October 4, 1916, the judgment of the trial court was affirmed by this court, and damages for bringing up the case for delay were awarded to the plaintiff (18 Ga. App. 649). On the return of the remittitur the judgment of the Court of Appeals was made the

34

judgment of the trial court, and judgment was entered for the sum awarded as damages,—$419.62. For the purpose of levy, Truitt had conveyed to Hogg, as required by law, the lands to which he held title from Hogg. On December 9, 1915, the execution in favor of Truitt was levied on the lands conveyed. On October 26, 1916, the execution for $419.62 (damages) was also levied on the lands, and the plaintiff therein claimed from the sheriff who held this execution satisfaction in full from the proceeds of the sale under the first levy. It appeared also that in 1914 Hogg executed a promissory note to the C. V. Truitt Company for $2,786 and interest, secured by a deed to 100 acres of land, not including any of the land described in the deeds to J. G. Truitt. The C. V. Truitt Company obtained judgment on this note for $3,426.56. This land was levied on and was sold for $1,000, which amount, after certain deductions hereinafter stated, was credited on the C. V. Truitt Company fi. fa., leaving a balance due thereon of $2,596.69. The C. V. Truitt Company, as additional security for its debt, held the bond to reconvey executed by J. G. Truitt to Hogg, which was transferred by Hogg to the C. V. Truitt Company on February 27, 1915, and recorded the same day in the office of the clerk of the superior court of Troup county. This bond to reconvey described only the 416½ acres of land, and did not include the Carlisle place of 50 acres. It appeared also that W. L. Hardy obtained a judgment against Hogg on September 16, 1915, for $916.63, and on the same day the judgment and the execution were duly entered of record.

Under the execution of J. G. Truitt the 466½ acres of land were sold, the 416½-acre tract bringing $5,380, and the 50-acre Carlisle place $485. Under the execution of C. V. Truitt Company the 100-acre tract was sold, and brought $1,000. Before the sales of these lands the execution of W. L. Hardy was placed in the hands of the sheriff, W. B. Shirey, and he claimed the right to be paid the full amount of his execution, from the sales under the J. G. Truitt execution. There was also placed in the hands of the sheriff, an execution for State and county taxes for the year 1915, amounting to $564.99, which had been transferred to J. E. Dunson Brothers Company. After the sales of the property J. G. Truitt filed a petition against the sheriff for a rule to distribute the money derived from the sales, except from the sale under the C. V.

Truitt Company's judgment. W. L. Hardy and the C. V. Truitt Company each intervened and were made parties to the suit, each claiming priority out of the said funds. W. L. Hardy asserted that after payment of the principal, interest, and costs, amounting to $4,144.79, due to J. G. Truitt, he, Hardy, should be paid the balance arising from the sale under the J. G. Truitt execution. Hardy contended that he was entitled to the proceeds of the 50 acres (the Carlisle place), since the remainder of the money was sufficient to pay the claim of J. G. Truitt, except the judgment against Hogg for damages for delay.

The judgment of the trial court (omitting immaterial parts) was as follows: "J. G. Truitt v. W. B. Shirey, sheriff, et al. Money rule, city court of LaGrange, December term, 1916. In the money rule above stated, upon consideration thereof, I rule as follows: First, costs. . . Second, taxes. . . Third, out of the J. G. Truitt fund of $5,865 I allow to be paid the amount of his judgments, principal and interest, including his smaller judgment of $419.62, with interest. I hold that this judgment has a superior lien on this fund. I consider that when this debt was created and the lands conveyed to him to secure it, it was in contemplation of the parties that the deed given him by Hogg would secure whatever judgment he might obtain in enforcing the collection of his debt. Fourth: After the payment of the above amounts, I hold that C. V. Truitt Company has the next lien on the fund arising from the sale of all of the J. G. Truitt lands, except 50 acres, known as the Carlisle place, by reason of the transfer of the bond for titles given by J. G. Truitt to W. F. Hogg, anterior to any judgments against W. F. Hogg (8 *Ga. App.* 802). This bond for titles did not include the Carlisle place of 50 acres, which sold for $485. On this part of the fund, $485, after the payment of costs, taxes, and the J. G. Truitt claim, as above stated, W. L. Hardy has the next lien, by reason of his judgment obtained September 9, 1915. The question is, how shall this surplus be prorated between C. V. Truitt Company and W. L. Hardy? The costs, taxes, and the J. G. Truitt claim to be paid out of this fund of $5,865, amounts to $5,174.23. The remainder of this fund I prorate equitably, according to the size of the two funds, on which they have superior liens. This gives C. V. Truitt Company $633.65, and W. L. Hardy $57.12. Fifth: In reference to the

fund of $1,000, arising from the C. V. Truitt Company lands, I order these funds distributed as follows: Costs, $57.71; taxes, $170.13 to J. E. Dunson & Brothers Company; C. V. Truitt Company, $772.16; a total of $1,000. Sixth: The fund arising from the J. G. Truitt lands, according to the ruling above stated, shall be distributed as follows: Costs and attorney's fees, $214.96; taxes to J. E. Dunson & Brothers Company, $394.86; J. G. Truitt, $4,-564.41; C. V. Truitt Company, $633.65; W. L. Hardy, $57.12. I order the sheriff to pay the above out of the funds to the parties as above stated. This 23d day of December, 1916. Frank Harwell, J. C. C. LaGrange." To this ruling Hardy excepted.

*A. H. Thompson,* for plaintiff in error.

*E. T. Moon, M. U. Mooty,* contra.

BROYLES, P. J. (After stating the foregoing facts.) 1. As authority for the ruling in the first headnote we cite *Garrison* v. *Wilcoxson,* 11 *Ga.* 154. In that case the court, in speaking of the statute providing for damages for frivolous appeals to the superior court (Civil Code of 1910, § 5018), said: "The object of this act is to prevent groundless appeals, by inflicting a punishment, in the shape of damages, *and to compensate the respondent for delay, cost and vexation occasioned by such appeal*" (italics ours). Although in that case the appeal was to the superior court, the principle involved applies also to cases carried to this court. It is true that the code-section just mentioned requires that damages *shall* be assessed, but only after it shall appear to the jury, or (in appeals from a justice's court) to the judge of the superior court, that the appeal was frivolous and intended for delay only. Section 6213 of the Civil Code (1910) is as follows: "Ten per cent. damages may be awarded by the Supreme Court upon any judgment for a sum certain, which has been carried to the said court, and there affirmed: Provided, in their opinion, the case was taken up for delay only, and it shall be so entered in the remittitur." It will be seen from the language just quoted (which applies also to this court) that in the cases to which it applies the awarding of damages is discretionary with the court, even after it appears that the case was carried up for delay only. In our judgment, however, this distinction between the two acts is not material as to the question now under consideration. There is no certainty under either statute that damages will be assessed against the party car-

rying up the case if he fails in his case. In the trial court, before such damages shall be given, it must be shown, not only that the appeal is frivolous, but that it was made for delay only. Thus it is clearly seen that while the assessment of damages in the trial court is mandatory, it is so only in two contingencies, which are very uncertain and which no one can count upon. In the Court of Appeals the uncertainty of damages being assessed is still greater, but this is a difference in degree only and not a substantive, vital distinction, for in neither court is there any certainty that damages will be awarded, even where a frivolous appeal appears.

2. In our opinion the deed given by Hogg to secure his note to Truitt secured the principal, the interest, the costs, and the judgment for damages, such judgment being incident to the foreclosure and collection of the debt. In *Donovan* v. *Hogan,* 8 *Ga. App.* 754 (70 S. E. 153), this court held that the costs in a case were a part of the debt, and in the opinion we find this language: "This liability of being subjected to the payment of costs is one to which the defendant exposes himself by not paying the debt when it is due; and when once the suit is filed and the costs accrue, they become as much a part of the debt as the principal and interest." We agree, however, with counsel for the plaintiff in error that damages for delay are not entirely on the same footing with the costs of a case, and we would hesitate to decide this case on that theory, but in *Phillips* v. *Behn,* 19 *Ga.* 298, we find a decision that, in our judgment, is controlling upon the question now under consideration. In that case the 6th headnote is as follows: "Property alienated pending an appeal is as much bound for the payment of damages for a frivolous appeal as it is for the payment of the rest of the amount of the appeal judgment." It is true that the appeal in that case, as pointed out by counsel for the plaintiff in error, was to the superior court, but, as we have already tried to show, the principle is substantially the same whether the appeal be to the superior court or to this court. The defendant in error, J. G. Truitt, had a special judgment against Hogg, secured by a deed to land, and was delayed in securing his money, by an appeal for delay only, until the debt had been increased by additional interest, costs, and the damages for delay. The original contract between Hogg and Truitt, secured by a deed to land, carried with

it security for the entire debt, and, as it turned out, that debt consisted of the principal, the interest, the costs of the case, attorney's fees, and the damages for delay. In this case Hardy was not an innocent purchaser, for he knew, or should have known, that under the law damages for delay could and might be assessed against Hogg. We think, therefore, that the court was correct in holding that the judgment for damages was a special lien upon the land and was superior to Hardy's general judgment.

3. As authority for the ruling in the third headnote we cite *McIntire* v. *Garmany*, 8 *Ga. App.* 802 (70 S. E. 198). See also, in this connection, *Hubert* v. *Merchants Bank*, 137 *Ga.* 70 (72 S. E. 505). The judgment of C. V. Truitt Company, its debt having been secured by the transferred bond for titles, was superior to Hardy's general judgment, as to the proceeds derived from the sale of land covered by the bond for titles, but, as to the fund derived from the sale of the land not so covered, was inferior to Hardy's judgment.

It is insisted by counsel for the plaintiff in error that the court erred in not compelling J. G. Truitt to elect to satisfy his entire debt out of the fund derived from the sale of the 416½ acres of land, the fund being sufficient for that purpose. Section 3220 of the Civil Code (1910) provides that "A creditor having a lien on two funds of the debtor, equally accessible to him, will be compelled to pursue the one on which other creditors have no lien." We would agree with this contention if there had been no lien except J. G. Truitt's on the 416½-acre tract of land. It appears, however, from the bill of exceptions and the record, that there were other liens on this identical property. In our opinion, therefore, the court did not err in not confining J. G. Truitt's claim to the fund arising from the sale of the 416½ acres of land.

The court correctly held also that C. V. Truitt Company's claim was superior to Hardy's claim, as to the proceeds derived from the sale of the 416½ acres of land. In our judgment, however, the court erred in awarding any part of the sum of $485, the proceeds of the sale of the 50 acres of land known as the Carlisle place, to C. V. Truitt Company, as that company's transferred bond for titles did not cover that property; and Hardy's claim to this fund was superior to that of the Truitt Company, and, as against that company, he was entitled to all of it.

There was in this case no exception to the judgment directing that the tax execution should be paid next after the costs. See, however, in this connection, the opinion this day rendered in *Truitt Company* v. *Dunson & Brothers Co.,* post, 535 (a companion case to the instant one), where it was held, the question being there properly raised, that such judgment was erroneous.

The judgment being in part reversed, it is directed that all the costs of the writ of error be taxed against the defendant in error.

*Judgment affirmed in part, and reversed in part. Jenkins and Bloodworth, JJ., concur.*